GEORGE B. ELY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

**Real property — prescriptive right of state to flood lands by maintaining flash boards on dam used to provide water for state canal.**

The legislature in 1864, by chapter 475 of the laws of that year, authorized the rebuilding of a dam across the Oswego river, which river is used as a part of the canal system of the state, at a sufficient height to maintain seven feet of water in the prism of the canal on the levels above. The dam was constructed of less height than the depth of water specified in the canal, the intention being to place flash boards upon the dam during the dry seasons to raise the water sufficiently to meet the purposes of the act. Such flash boards were used for that purpose, not occasionally or for brief periods, but continuously during the low-water seasons of each year since the construction of the dam.

*Held, first,* that there are no findings of fact or conclusions of law upon which it can be determined that the one-year Statute of Limitations contained in the Revised Statutes of 1828, as amended by chapter 836 of the Laws of 1866, had run and become a bar to plaintiff's claim; *second,* that under the findings as made, the state had obtained a prescriptive right to maintain the dam together with the flash boards thereon before the damages accrued, to recover for which this action is brought.

*Ely* v. *State,* 132 App. Div. 938, affirmed.

(Argued June 16, 1910; decided September 27, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 8, 1909, affirming a judgment in favor of defendant entered upon a decision of the Court of Claims.

The nature of the claim and the facts, so far as material, are stated in the opinion.

*O. M. Reilly* for appellant. The state is liable to the claimant for the damage caused him by reason of the flash boards being placed upon the Phœnix dam in 1901 and 1902, by reason of which the water in the Oneida river set back, overflowed the claimant's premises and destroyed his crops. (*People* v. *Fisher,* 190 N. Y. 476.) The state did not acquire title by prescription. (*Prentice* v. *Geiger,* 74 N. Y. 341; *Lewis* v. *N. Y. & H. R. R. Co.,* 162 N. Y. 202; *Russell* v. *Scott,* 9 Cow. 279; *Anderson* v. *Hubbell,* 93 Ind. 570; *George* v. *Hoffman,* 133 Penn. St. 381; *T. W. P. Co.* v. *Raff,* 36 N. J. L. 335; *Hall* v. *State,* 92 App. Div. 98.) The use of these flash boards upon the dam for a few months in the year and only then in dry seasons did not give the state a prescriptive right to flood claimant's premises or to acquire title by adverse possession. (2 Farnham on Watercourses, 1754, § 541; *Marclay* v. *Schultz,* 29 N. Y. 346; *Wheeler* v. *Spinola,* 54 N. Y. 377; *Mission* v. *Cronin,* 143 N. Y. 524; *Pierce* v. *Traverse,* 97 Mass. 306; *Roberts* v. *Baumgarten,* 110 N. Y. 385; *Bree* v. *Wheeler,* 129 Cal. 145; *American Co.* v. *Bradford,* 27 Cal. 368; *Cave* v. *Crafts,* 53 Cal. 138; *Ball* v. *Kehl,* 95 Cal. 613; *Alta Land Co.* v. *Han-*

*cock*, 85 Cal. 219.)   The act of flooding claimant's premises was a trespass and did not commence to run until the act itself was done.   (*Reed* v. *State*, 108 N. Y. 407 ; *Brewster* v. *Rogers Co.*, 169 N. Y. 73 ; *Yaw* v. *State*, 127 N. Y. 191 ; *Folts* v. *State*, 118 N. Y. 406.)

*Edward R. O'Malley, Attorney-General* (*Wilber W. Chambers* of counsel), for respondent.   Claimant's claim when filed was barred by the Statute of Limitations, and was properly dismissed for that reason.   (1 R. S. ch. 9, tit. 9, § 48 ; *Benedict* v. *State*, 120 N. Y. 231 ; *Marks* v. *State*, 97 N. Y. 572 ; *Stewart* v. *State*, 105 N. Y. 254 ; *Heacock & Berry* v. *State*, 105 N. Y. 246 ; *People ex rel. Millard* v. *Chapin*, 104 N. Y. 96.)   Not only was claimant's claim barred by the Statute of Limitations, but the state has acquired the right by prescription to flood the lands in question to the extent that the same is complained of.   (*Hammond* v. *Zehner*, 21 N. Y. 119 ; *Eckerson* v. *Crippen*, 110 N. Y. 585 ; *Hall* v. *State*, 72 App. Div. 360 ; 92 App. Div. 96.)

HAIGHT, J.   On the 31st day of May, 1903, the plaintiff, George Burke Ely, filed a claim against the state for damages alleged to have been sustained by him during the years 1901 and 1902, by reason of flash boards placed upon the dam across the Oswego river at Phœnix, N. Y., by order of the commissioner of public works, thereby causing the water of that river and that of the Oneida river to overflow the lands of the plaintiff located on Oneida river at what is known as Big Bend, thus destroying his crops and meadows.   It appears from the findings of the Court of Claims that the Oneida river and the Oswego river are used as a part of the canal system of the state ; the Oneida river flowing into the Oswego river at a point above Phœnix, at which place there was a dam across the Oswego river prior to 1864.   In that year the legislature passed an act, known as chapter 475, by which the canal commissioners were authorized at the earliest practicable time, to rebuild the dam at Phœnix at a sufficient height to maintain seven feet of water in the prism of the

canal on the levels above the dam, and to construct the same of stone, in such manner as the canal commissioners may determine to be the most practical to render such structure permanent. The canal commissioners, pursuant to this statute, did construct a dam six feet three inches in height, intending thereby to secure the necessary depth of water by the erection of flash boards on the top of the dam, and for that purpose holes were drilled in the stone coping for the placing of iron pins therein to hold the flash boards, the design being not to raise the water any higher than was necessary for canal navigation. The flash boards were to be used temporarily, and were so placed on the dam back of the iron pins that the high water during freshets would carry them off, thus avoiding the raising of the water higher than was necessary for the purpose intended, and avoiding the unnecessary flooding of lands during the high-water seasons of the year. It was further found, as a fact, that every year since the construction of the dam in 1864 flash boards have been placed thereon each year as the low-water period occurred, and after the low-water period had passed they were carried off by the elements and natural forces; that there had been an open, notorious and continuous user of the flash boards for twenty years or more prior to the presentation of the plaintiff's claim, and that such boards were necessary to the operation of the canal and have been used since the reconstruction of the dam, pursuant to the statute of 1864. And as conclusions of law the court found that the state acquired the right under the statute to flood plaintiff's lands to the extent of the flash boards placed upon the dam, and that the state had acquired the prescriptive right to so flood claimant's lands, and, therefore, dismissed his claim for damages.

The Court of Claims in its opinion states that the one-year Statute of Limitations contained in the Revised Statutes of 1828, as amended by chapter 836 of the Laws of 1866 (1 R. S. [6th ed.] pages 659, 660, sections 92 and 98), had run and became a bar to the plaintiff's claim. Section 92, so far as material, provides, in substance, that every person who has

suffered damages by the appropriation of his lands, etc., if he intends to claim such damages, " shall within one year after such premises, lands or waters have been taken permanently, appropriated or temporarily occupied, and within one year after jurisdiction shall be conferred upon the canal appraisers by the legislature to hear such other injury, file in the office of the canal appraisers a detailed statement of his claim in writing, signed by himself," etc.    Section 98 provides, " No claim for damages, for premises that shall have been appropriated to the use of a canal, at any time before this chapter shall be in force, shall be received by the appraisers, unless it shall be exhibited within one year after this chapter shall become a law; and the premises so appropriated shall be deemed the property of the state; and no claims, other than those so exhibited, shall be paid without the special direction of the legislature."    The difficulty, however, with this contention is that the Court of Claims has failed to find any facts or conclusions of law upon which it can be determined whether or not the statute had run and become a bar to the plaintiff's claim.    Some of the damages alleged were claimed to have resulted from the fixing of the flash boards upon the dam in September, 1902.    As to these damages, they occurred within the year of the filing of the claim.    The question, therefore, for us to determine arises with reference to the finding that the state had acquired a prescriptive right to use the flash boards upon the dam, and to flood such low lands as may be covered by water by reason of such boards.

In the case of *Hammond* v. *Zehner* (21 N. Y. 118) the action was brought to recover damages for flowing the lands of the plaintiff by means of a dam erected by the defendant across the Canaseraga creek for the purpose of supplying power in the running of a grist mill.    It was held that the continued user for more than twenty years of an easement injurious to the land of another, such as the overflowing of the same with water, authorizes the presumption of a grant of such easement.

In the case of *Murcly* v. *Shults* (29 N. Y. 346) the action

was to recover damages occasioned by the overflowing of the plaintiff's land with water by raising the height of a dam. The defendant claimed the right to thus raise the water, by prescription, and gave evidence tending to prove that flash boards had been constantly used on the dam for more than twenty years before the dam was repaired, and that the dam as repaired was no higher than the old dam with the flash boards thereon. The trial judge in submitting the case to the jury was asked to charge that if the defendant had, during the twenty years previous, used flash boards on his dam during low water, he could not raise the dam to the height of the flash boards so as to keep the water up to the height of such boards during the whole year. The judge refused to so charge, but in lieu thereof charged, " That the defendants were entitled to maintain the dam in question at the same height it had been for twenty years and upwards preceding the time of the alleged injuries. If they believed from the evidence that the defendants at the time the dam was repaired in 1853, or at any other time, had increased the height of the dam in a manner to raise the water and flow it back upon the land of the plaintiff to a greater height than it had been for twenty years preceding that time, then the defendants were liable for the damages sustained by the plaintiff in consequence thereof. On the other hand, if the jury believed from the evidence that the dam had not been raised so as to increase the usual and ordinary height of the water, then the plaintiff was not entitled to recover. That the defendants were not confined to any specified material, or to any particular mode of construction, for keeping the dam in repair; and whether the water was detained by a structure more or less permanent, or by the use of flash boards, could make no difference, or entitle the plaintiff to recover, so long as the water was not raised higher than it had been." On review, it was held that the request to charge was proper, but that the charge as made covered the ground embraced in the request, and, therefore, the verdict in favor of the defendant was affirmed.

In the case of *Eckerson* v. *Crippen* (110 N. Y. 585) it was held that the open and notorious use by the plaintiff of the water under a claim of right inaugurated an adverse user, and such user having been continuous for over twenty years, gave to the plaintiff a right to his continuance.

In the case of *Hall* v. *Augsbury* (46 N. Y. 622) it was held that where the parties maintaining and using a dam upon a stream below the plaintiff's dam, had for more than twenty years used flash boards upon their dam at different seasons of the year, which were partially removed when they materially interfered with the operation of the plaintiff's mill by the flowing back of water upon his wheel, when complaint was made, and thus continued without objection, they acquired a prescriptive right to place and use flash boards upon their dam to a height that would not materially obstruct the action of the plaintiff's mill wheel.

In the case of *Carlisle* v. *Cooper* (21 N. J. Eq. 576) it was held that, as a general rule, the height of a dam when in good repair and condition, including such parts and appendages as make its efficient height in its ordinary action and operation, fixes the extent of the right to flow, without regard to fluctuations in the flowage which are due to accidental causes, or the variation in the quantity of the water in the stream in times of low water or drouth, or in the pondage of the dam. There may be such continuance or use of flash boards as that they, in effect, are parts of the permanent structure, and by such user a right to flow by means of a permanent dam to the height of such boards may be acquired, but the occasional use of flash boards for short periods, when little or no injury may be done, as an exception to the general rule not to keep them on, does not amount to the open, uninterrupted and notorious adverse use necessary to establish a prescriptive right. The prescriptive right to the use or flow of water may be qualified as to times, seasons and mode of enjoyment, by the character of the use from which the right has originated.

In Gould on Waters, at section 334, it is said with refer-

ence to prescriptive right that " In order to establish the presumption of a right or easement in the lands or waters of another person, the enjoyment must have been uninterrupted, adverse, and under a claim of right, and with the knowledge of the owner, whose knowledge binds his grantee. It must have been inconsistent with or contrary to the interests of the owner, and of such a nature that it is difficult or impossible to account for it except upon the presumption of a grant from him." Again, at section 337, he says : " The user to be adverse must be attended by such circumstances of notoriety that the person against whom the right is exercised may have reasonable notice that the right is claimed against him, and be enabled to resist its acquisition by suit at any time before the period of prescription has elapsed. Thus, the occasional use of flash boards for brief periods, when little or no injury may be done, does not amount to that open and uninterrupted use which is required. Such boards may be used so continuously as to make them a part of the permanent structure, and by such user a right to flow to the height of such boards may be acquired ; but their use only during times of low water, though for more than twenty years, does not justify keeping the water to the height of such boards during the whole year. It is a question of fact for the jury whether such user has established the right." (See, also, *Hall* v. *State of N. Y.*, 72 App. Div. 360 ; *People* v. *Fisher*, 190 N. Y. 468 ; *Pierce* v. *Travers*, 97 Mass. 306.)

While much has been written upon this subject, the authorities to which we have above referred fairly cover the contention of the parties in this case and, we think, determine their respective rights. The legislature of the state in 1864 authorized the construction of the dam of sufficient height to produce seven feet of water in the prism of the canal. No contention is made that the authorities of the state have created a greater depth of water in the canal than that required by the act. The dam constructed under the provisions of the act was an appropriation of all of the lands abutting upon the stream which would be overflowed in consequence

thereof. It was a permanent appropriation, and the owners thereof, under the statute, had the right to apply to the state for the damages which they suffered by reason thereof within the time limited by the statute. (*Heacock & Berry* v. *State of N. Y.*, 105 N. Y. 246.) Whether they did so apply, we are not advised by the evidence or findings upon the question, other than that to which we have already alluded. The dam was constructed of a less height than the depth of the water specified in the canal. During the seasons of the year when the water was flowing over the dam of sufficient depth, there was ample to supply the canal. But during the dry seasons it was designed to place flash boards upon the dam which would raise the water sufficiently to meet the purposes of the act, and then in case of freshets the boards would flow away, thus preventing the overflow of more lands than was necessary for the use of the canal. The maintenance of these flash boards, under the findings, was not merely occasional or for brief periods, but they were continuously used during the low-water seasons of each year for the well-known and notorious purpose of supplying the necessary water for the use of the canal during the seasons of navigation, thus distinguishing this case from those that hold that the occasional use of flash boards is not sufficient to create a prescriptive right. We are, therefore, of the opinion that under the findings as made, the state had obtained the prescriptive right to maintain the dam, together with the flash boards thereon, before the damages occurred for which this claim was made.

The judgment should, therefore, be affirmed, with costs.

CULLEN, Ch. J., VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; GRAY, J., absent.

Judgment affirmed.