Samuel J. Silverman,
Acting Surrogate. This is a • final accounting of the successor trustee of a trust created in paragraph third, subdivision 2, of testatrix’ will. She died in 1936.
1. In said paragraph of her will testatrix created a trust of one half of her residuary estate for the benefit of her son Dana Brannan for life. Upon his death, the remainder is payable to his appointees under a power of appointment. In default of the valid exercise of the power, the remainder is payable to testatrix’ next of kin, then living.
Dana Brannan died on November 23,1965 leaving a will dated November 20,1964 which was probated in Florida on November 24, 1965 (presumably by ex parte probate in common form). The Florida court revoked the probate on February 17, 1967 and subsequently admitted a will dated June 18,1962 to probate. In both instruments, Dana Brannan had exercised the power of appointment, and directed the disposition of the trust now before this court.
A claim in varying amounts for legal services against the shares distributable herein to certain appointees under the power of appointment named in the 1962 will has been presented to the accounting fiduciary by the Florida attorney who opposed probate of the 1964 will and supported probate of the 1962 will.
The accounting fiduciary requests a determination as to whether this claim is enforceable against the shares of the appointees, and if so, the amount of each claim.
In substance, this aspect of the proceeding must be deemed a proceeding under SCPA 2110 by a fiduciary to fix the compensation of an attorney. (See SCPA 202.)
So far as I can see, the case does not fall within any statutory provision for costs or allowances.
The normal rule is that attorneys can look only to their clients for compensation; they may normally not impose a claim for compensation upon a person not a client. At least where an *285 attorney’s services were “necessarily performed for his own client ’ ’ the 1 ‘ fact that others were benefited does not, in the absence of agreement by them, impose a liability upon them to pay.” (Matter of Loomis, 273 N. Y. 76, 81-82.)
Surrogate Sobel has recently stated the rule in relation to funds administered in the Surrogate’s Court as follows (Matter of Povlsen, 62 Misc 2d 239, 243):
“ There is of course no doubt that the court may fix compensation of an attorney for the estate and also the compensation of an attorney retained by a devisee, legatee, distributee or person interested. This is simply a matter of contract between such parties. With one exception (a proceeding by a beneficiary which results in enhancement or financial gain to the estate) each must look to his own client for payment — the attorney for the estate out of estate funds, the attorney for the beneficiary out of that beneficiary’s share of the estate (Matter of Winburn, 160 Misc. 49). Costs and allowances (which sometimes include attorneys’ fees) are another matter not in issue here. (See Matter of O’Brien, 146 Misc. 555 ; also SCPA 2301, subd. 3 ; SCPA 2302, subd. 6.)
“* * *with a few statutory exceptions labeled ‘costs’ and ‘ allowances ’, the expense of attorneys’ fees cannot be charged against an adverse litigant — and surely not against a coparty. Compensation of attorneys is always a matter of contract express or implied; it may never be imposed upon a person not a client (Matter of Loomis, 273 N. Y. 76).”
In Matter of Winburn (160 Misc. 49) Surrogate Foley, one of the drafters of section 231-a of the Surogate’s Court Act, the predecessor of SCPA 2110, had occasion to consider what seems to me to be a closely analogous situation. Dispute had arisen as to the construction of a will, the question being whether half the residue passed under the will or by intestacy. The Court of Appeals (265 N. Y. 366), reversing the Appellate Division (240 App. Div. 879), held that it passed by intestacy. The intestate fund amounted to approximately $1,000,000. The attorneys who represented clients entitled to three-eighteenths of the intestate property brought a proceeding under section 231-a of the Surrogate’s Court Act to have their fees fixed and paid out of the estate generally, or out of the intestate fund, or out of the share of those next of kin not represented by them who obtained a financial benefit by reason of the decision of the Court of Appeals. Although the remaining next of kin had participated as parties, it was only these attorneys’ clients who took the appeal to the Court of Appeals from the unfavorable decision *286 of the Appellate Division. Nevertheless, Surrogate Foley denied the application, both in the exercise of his discretion and as a matter of law. In that case as in this, the attorneys had agreements with their own clients under which they were to receive a percentage (7%% or 10%) of the amount ultimately recovered and the attorneys sought to apply the same percentage against the shares of the other distributees. Surrogate Foley said:
“ The terms of the section [231-a] contemplated three varying sources of payment of the reasonable value or agreed compensation when judicially determined: (1) to the attorney for the representative of the estate, payment was to be directed to be made out of the general estate; (2) to the attorney for a legatee, life tenant, remainderman or distributee by intestacy, payment was to be directed to be made out of the respective share or interest of the client; (3) in extraordinary and exceptional cases where an attorney for one of the persons interested had rendered services which resulted to the benefit of the general estate, payment might be directed to be made by the surrogate out of the general estate. (P. 52.)
‘1 There is not the slightest indication, however, in the context of the section of any legislative intent that the charges of the attorney for one individual party, whether legatee or distributee, should be paid out of the shares of other individual parties. Such is the situation here. No funds were brought back into the estate as in a surcharge case. The dispute only arose as to testacy or intestacy. (P. 53.)
“ Not the slightest benefit resulted to the general estate from the efforts of the petitioning attorneys. They were successful in obtaining a determination that a substantial part of the will was invalid and that intestacy resulted. The effect of that decision was to decree that part of the property, which was always in the estate, was to be distributed to one set of individuals instead of to the members of another group. A purely personal right of the successful group was vindicated. Section 231-a gives no authority to the surrogate to impose the additional burden of a charge of one group of attorneys upon the shares of other individuals who are obligated to pay their own attorneys. (P. 54.)
“ Certainly no court has ever held that, aside from the award of statutory costs and allowances, the charge of an attorney for a successful party could be imposed directly upon the shares of other parties similarly situated because of their individual rights. The effect of such an attempted charge here would be *287 to impose by judicial fiat the relation of attorney and client where no contract, express or implied, nor any agreement of hiring ever existed.” (P. 56.) (Surrogate Foley held the provision authorizing allowances in construction proceedings [now SOPA 2302, subd. 6] had no retrospective effect. This has no application to the present proceeding.) (See, also, Matter of Luckenbach, 280 App. Div. 994, affd. 307 N. Y. 795.)
In Matter of Limberg (257 App. Div. 827) and Matter of Turton (34 Misc 2d 917) it was held that attorneys for successful contestants in a probate proceeding could be allowed reasonable compensation from the general estate. If these decisions were inconsistent with the Povlsen and Winburn decisions, I think I would be inclined to agree with the Povlsen and Winburn decisions.
However, I think the Limberg and Turton eases can be distinguished from the present situation in this respect: Presumably the courts in Limberg and Turton found their authority to make the award to the successful attorneys for the contestants by application of the common-law doctrine that a trust fund must bear the expense of its administration. The probate estate was being administered in the respective Surrogates’ Courts involved, and the very first step in administering those estates in those courts was to determine whether the administration was to be governed by a will and if so, which will.
In the present case the services claimed for were rendered in the Florida Probate Court. The estate there being administered was that of the donee of the power of appointment, Dana Brannan. No doubt the Florida court in the course of its administration of that estate has jurisdiction to make appropriate allowances out of the fund in that court. But the fund from which the attorneys now seek compensation is a different fund, administered in a different court under the will of a different decedent, specifically a trust fund being administered in the Surrogate’s Court of New York County under the will of Eunice Dana Brannan. It is true that as a result of the decision of the Florida court certain consequences flow as to who gets the remainder of the trust being administered in this court. But I think that, for the purposes of determining whether attorneys’ fees should be imposed upon beneficiaries who have not retained the Florida attorneys, this should be deemed only as incidental benefit and the services should not be deemed an expense of administering the New York trust fund.
Certain other considerations seem to me relevant. Claimants agreed with specific clients to perform specific services for the *288 benefit of those clients, taking their instructions from those clients, and for these services they agreed that they were to receive 45% of the benefit that those clients realized. As in Matter of Loomis (273 N. Y. 76, 81, 82, supra) “ Every act of [claimant] as attorney was necessarily performed for his own client. ’ ’ They now seek a compensation greater than what they contracted for.
Finally, I think that as a matter of public policy, we should be very cautious about increasing the types of cases in which a lawyer who has done specified work for a specified compensation pursuant to a retainer from specific clients can be allowed to claim additional compensation for the same work from persons who never retained him and with whom he had no attorney-client relationship.
Both as a matter of law and in the exercise of discretion the claim is disallowed.
2. Petitioner trustee requests that the income of the trust remaining in its hands, after payment of accrued income to the estate of the life beneficiary and after payment of commissions and other administration expenses chargeable to income, be distributed to the respective appointees in proportion to their interest in principal in accordance with Matter of Myers (10 A D 2d 823, affd. 8 N Y 2d 947). The request is granted.